IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| BRYAN WHEAT § § § vs. § § § COMMISSIONER OF SOCIAL § SECURITY § § § | CIVIL ACTION 6:22cv277-JDK-KNM |

# REPORT AND RECOMMENDATION
# OF THE UNITED STATES MAGISTRATE JUDGE

Plaintiff initiated this lawsuit by filing a complaint seeking judicial review of the Commissioner's decision denying his application for Social Security benefits. The matter was referred to the undersigned for findings of fact, conclusions of law and recommendations for the disposition of the matter pursuant to 28 U.S.C. § 636(b)(1). Having considered Plaintiff's brief (ECF 16), the Commissioner's responsive brief (ECF 17) and Plaintiff's reply brief (ECF 18), the undersigned recommends that the Commissioner's final decision be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) with instructions for further consideration consistent with this opinion..

## PROCEDURAL HISTORY

Plaintiff filed an application for disability benefits on September 10, 2020 alleging a disability onset date of October 1, 2014. The application was denied initially and again upon reconsideration. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). The ALJ conducted a video hearing on November 10, 2021 and entered an unfavorable decision on

1

November 26, 2021. Plaintiff sought review from the Appeals Council. On April 7, 2022, the Appeals Council denied the request for review. As a result, the ALJ's decision became that of the Commissioner. After receiving an extension of time, Plaintiff filed this lawsuit on July 22, 2022, seeking judicial review of the Commissioner's decision.

## STANDARD

Title II of the Act provides for federal disability insurance benefits. Judicial review of the denial of disability benefits under section 205(g) of the Act, 42 U.S.C. § 405(g), is limited to "determining whether the decision is supported by substantial evidence in the record and whether the proper legal standards were used in evaluating the evidence." *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994) (quoting *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990)); *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991) (*per curiam*). A finding of no substantial evidence is appropriate only where there is a conspicuous absence of credible choices or no contrary medical evidence. *Johnson v. Bowen*, 864 F.2d 340, 343–44 (5th Cir. 1988) (citing *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)). Accordingly, the Court "may not reweigh the evidence in the record, nor try the issues *de novo*, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision." *Bowling*, 36 F.3d at 435 (quoting *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988)); *see Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993); *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992); *Cook v. Heckler*, 750 F.2d 391, 392 (5th Cir. 1985). Rather, conflicts in the evidence are for the Commissioner to decide. *Spellman*, 1 F.3d at 360 (citing *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)); *Anthony*, 954 F.2d at 295 (citing *Patton v. Schweiker*, 697 F.2d 590, 592 (5th Cir. 1983)). A decision on the ultimate issue of whether a claimant is disabled, as defined in the Act, rests with

the Commissioner. *Newton v. Apfel*, 209 F.3d 448, 455–56 (5th Cir. 2000); Social Security Ruling ("SSR") 96-5p.

"Substantial evidence is more than a scintilla but less than a preponderance—that is, enough that a reasonable mind would judge it sufficient to support the decision." *Pena v. Astrue*, 271 Fed. Appx. 382, 383 (5th Cir. 2003) (citing *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994)). Substantial evidence includes four factors: (1) objective medical facts or clinical findings; (2) diagnoses of examining physicians; (3) subjective evidence of pain and disability; and (4) the plaintiff's age, education, and work history. *Fraga v. Bowen*, 810 F.2d 1296, 1302 n. 4 (5th Cir. 1987). If supported by substantial evidence, the decision of the Commissioner is conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). However, the Court must do more than "rubber stamp" the Administrative Law Judge's decision; the Court must "scrutinize the record and take into account whatever fairly detracts from the substantiality of evidence supporting the [Commissioner's] findings." *Cook*, 750 F.2d at 393 (5th Cir. 1985). The Court may remand for additional evidence if substantial evidence is lacking or "upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g); *Latham v. Shalala*, 36 F.3d 482, 483 (5th Cir. 1994).

A claimant for disability has the burden of proving a disability. *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991). The Act defines "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i)(1)(A) and 423(d)(1)(A). A "physical or mental impairment"

3

is an anatomical, physiological, or psychological abnormality which is demonstrable by acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

To determine whether a claimant is disabled, the Commissioner must utilize a five–step sequential process. *Villa*, 895 F.2d 1022. A finding of "disabled" or "not disabled" at any step of the sequential process ends the inquiry. *Id.*; see *Bowling*, 36 F.3d at 435 (citing *Harrell*, 862 F.2d at 475). Under the five–step sequential analysis, the Commissioner must determine at Step One whether the claimant is currently engaged in substantial gainful activity. At Step Two, the Commissioner must determine whether one or more of the claimant's impairments are severe. At Step Three, the commissioner must determine whether the claimant has an impairment or combination of impairments that meet or equal one of the listings in Appendix I. Prior to moving to Step Four, the Commissioner must determine the claimant's Residual Functional Capacity ("RFC"), or the most that the claimant can do given his impairments, both severe and non–severe. Then, at Step Four, the Commissioner must determine whether the claimant is capable of performing his past relevant work. Finally, at Step Five, the Commissioner must determine whether the claimant can perform other work available in the local or national economy. 20 C.F.R. §§ 404.1520(b)–(f). An affirmative answer at Step One or a negative answer at Steps Two, Four, or Five results in a finding of "not disabled." *See Villa*, 895 F.2d at 1022. An affirmative answer at Step Three, or an affirmative answer at Steps Four and Five, creates a presumption of disability. *Id*. To obtain Title II disability benefits, a plaintiff must show that he was disabled on or before the last day of his insured status. *Ware v. Schweiker*, 651 F.2d 408, 411 (5th Cir. 1981), *cert denied*, 455 U.S. 912, 102 S.Ct. 1263, 71 L.Ed.2d 452 (1982). The burden of proof is on the claimant for the first four steps, but shifts to the Commissioner at Step Five if the claimant shows that he cannot

4

perform his past relevant work. *Anderson v. Sullivan*, 887 F.2d 630, 632–33 (5th Cir. 1989) (*per curiam*).

The procedure for evaluating a mental impairment is set forth in 20 CFR §§ 404.1520a and 416.920a (the "special technique" for assessing mental impairments, supplementing the five-step sequential analysis). First, the ALJ must determine the presence or absence of certain medical findings relevant to the ability to work. 20 CFR §§ 404.1520a(b)(1), 416.920a(b)(1). Second, when the claimant establishes these medical findings, the ALJ must rate the degree of functional loss resulting from the impairment by considering four areas of function: (a) activities of daily living; (b) social functioning; (c) concentration, persistence, or pace; and (d) episodes of decompensation. 20 CFR §§ 404.1520a(c)(2–4), 416.920a(c)(2–4). Third, after rating the degree of loss, the ALJ must determine whether the claimant has a severe mental impairment. 20 CFR §§ 404.1520a(d), 416.920a(d). If the ALJ's assessment is "none" or "mild" in the first three areas of function and is "none" in the fourth area of function, the claimant's mental impairment is "not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in [the claimant's] ability to do basic work activities." 20 CFR §§ 404.1520a(d)(1), 416.920a(d)(1). Fourth, when a mental impairment is found to be severe, the ALJ must determine if it meets or equals a Listing. 20 CFR §§ 404.1520a(d)(2), 416.920a(d)(2). Finally, if a Listing is not met, the ALJ must then perform a residual functional capacity assessment, and the ALJ's decision "must incorporate the pertinent findings and conclusions" regarding the claimant's mental impairment, including "a specific finding as to the degree of limitation in each of the functional areas described in [§§ 404.1520a(c)(3), 416.920a(c)(3)]." 20 CFR §§ 404.1520a(d)(3) and (e)(2), 416.920a(d)(3) and (e)(2).

## ALJ'S FINDINGS

The ALJ made the following findings in her November 26, 2021 decision:

1. The claimant last met the insured status requirements of the Social Security Act on September 30, 2018.

2. The claimant did not engage in substantial gainful activity during the period from his alleged onset date of October 1, 2014 through his date last insured of September 30, 2018 (20 CFR 404.1571 *et seq.*).

3. Through the date last insured, the claimant had the following severe impairments: anxiety disorder, agoraphobia, depression, alcohol abuse, post traumatic stress disorder (PTSD), and obsessive compulsive disorder (OCD) (20 CFR 404.1520(c)).

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) with the following additional limitations: occasional climbing ramps and stairs; no climbing ladders, ropes, or scaffolds; the avoidance of all unprotected heights, workplace hazards, and machinery; occasional stooping and crouching; no kneeling or crawling; simple, routine tasks not at a production pace; occasional, brief interactions with supervisors or co-workers; no interactions with the general public; the claimant required a work environment where members of the general public would not be present; occasional changes to a routine work setting; and the claimant would have been off task 5–9% of the workday.

6. Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on August 9, 1988 and was 30 years old, which is defined as a younger individual age 18–49, on the date last insured (20 CFR 404.1563).

8. The claimant has at least a high school education (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569a).

11. The claimant was not under a disability, as defined in the Social Security Act, at any time from October 1, 2014, the alleged onset date, through September 30, 2018, the date last insured (20 CFR 404.1520(g)).

## ADMINISTRATIVE RECORD

*Administrative Hearing*

Plaintiff alleges a disability onset date of October 1, 2014 and his date last insured was September 30, 2018. At his hearing before the ALJ on November 10, 2021, Plaintiff testified about his previous work in the military as an Army support system signal specialist. After the Army, Plaintiff stated that he went to college and worked part-time as an event specialist. Plaintiff explained that he became unable to work in 2014 due to PTSD symptoms.

Plaintiff described having panic attacks, anxiety attacks, difficulty being around people and eventually an inability to leave home or get out of bed. Plaintiff stated that he had increasing difficulty performing daily tasks such as showering and brushing his teeth and developed numbness in his legs. Plaintiff testified that his condition deteriorated to the point that he lost too much weight and could no longer walk, culminating in a hospitalization in August 2018. Plaintiff stated that he would vomit if someone came to visit him because he could not handle being around strangers, he suffered from debilitating obsessive compulsive disorder symptoms, and he was unable to maintain relationships with friends.

Plaintiff testified that he had pain in his knees and back since his service in the Army. He also stated that he had neuropathy in his feet and he was diagnosed with diabetes in August or September 2020. Plaintiff testified that he was also diagnosed with irritable bowel syndrome

during his August 2018 hospital admission. He explained that he did not sleep well and felt he could only sleep if he consumed alcohol. Plaintiff stated that he received a 100% disability rating from the VA on May 13, 2020. He indicated that agoraphobia prevented him from getting seen sooner at the VA for his disability rating. More recently, Plaintiff stated that he is receiving counseling and medication for his mental health.

A vocational expert witness, Kathleen Doehla, also testified at the hearing. Ms. Doehla classified Plaintiff's past work as military crewmember, DOT 378.684-014, SVP 3, very heavy. The ALJ presented Ms. Doehla a hypothetical individual of Plaintiff's age, education, and work experience who can work at the light exertional level, can occasionally climb ramps and stairs, cannot climb ladders, ropes, or scaffolds, can occasionally stoop and crouch, cannot kneel or crawl, who must avoid all unprotected heights, workplace hazards, and machinery, who is limited to simple, routine tasks, not at a production pace, who could have occasional brief interactions with supervisors and co-workers and none with the general public, who requires a work environment where members of the general public would not be present and who can tolerate occasional changes to a routine work setting. Ms. Doehla testified that the hypothetical individual could not perform Plaintiff's past work. She identified the following jobs that would be available for the hypothetical individual: (1) mail clerk, DOT 209.687-026, SVP 2, light, with approximately 47,000 jobs in the national economy; (2) folder, DOT 369.687-018, SVP 2, light, with approximately 85,000 jobs in the national economy; and (3) office helper, DOT 239.567-010, SVP 2, light, with approximately 27,000 jobs in the national economy. She opined that an employee could not be off task 10% or more of the workday and could have no more than one absence per month, totaling no more than seven absences per year, to maintain employment.

*Medical Evidence*

Dr. Susan Ing completed a mental status examination of Plaintiff at the VA clinic on June 9, 2014. Plaintiff's mood was euthymic with congruent affect. He had normal speech, good eye contact, no suicidal or paranoid thoughts, coherent, goal-directed thoughts, appropriate orientation, intact remote, recent past and immediate memory, no concentration or attention deficits, logical reasoning and good insight. Plaintiff was continued on quetiapine, bupropion was increased and Vistaril was decreased.

Plaintiff saw Pamela Fisher, a VA mental health social worker, on September 24, 2015. Plaintiff reported a decline in his mental health, obsessive counting rituals, anxiety causing him to stay in his room and drink alcohol, and an inability to shut down his mind from obsessive thoughts. Plaintiff expressed a desire to improve his quality of life. Ms. Fisher identified treatment goals to include reducing the fear of triggering panic, eliminating avoidance of activities outside of the home, increasing comfort in leaving the home, functioning daily without interference from OCD, and recognizing, accepting and coping with feelings of depression and anxiety. Plaintiff returned to Ms. Fisher on November 12, 2015 and January 8, 2016 to discuss his progress. On the January 8th visit, Plaintiff arrived at the clinic anxious and eventually calmed down enough to sit and complete the office visit. On February 12, 2016, Plaintiff reported an increased ability to tolerate anxiety and described reconnecting with an old friend on the phone and through social media. Ms. Fisher noted that Plaintiff had little obvious anxiety. Plaintiff canceled an appointment on March 24, 2016 and did not show for an appointment with Ms. Fisher on June 3, 2016.

The bulk of the medical evidence in the record is for the time period after Plaintiff's date last insured. Plaintiff was admitted to the hospital between August 24, 2019 and August 27, 2019 for alcohol withdrawal syndrome, dehydration and constipation. Plaintiff went to the emergency room on August 29, 2019 with generalized abdominal pain and intermittent substernal chest pain

and palpitations. Plaintiff reported a history of anxiety, PTSD, agoraphobia, and alcohol abuse. On examination, Dr. Ryder noted normal behavior, anxious mood, normal cardiovascular, pulmonary, and neurological examinations, gynecomastia and mild diffuse thrombotic thrombocytopenic purpura. An ECG was normal with no acute ST changes. Dr. Ryder diagnosed anxiety and alcohol withdrawal syndrome without complication.

Plaintiff went to the emergency room on multiple occasions seeking a medication refill of Ativan. On September 14, 2019, he reported vomiting and blood in his stool. He explained that he was being treated for these symptoms but he had been unable to get further work up through the VA. On September 18, 2019, Plaintiff went to a VA clinic in Longview to establish care. Plaintiff complained of stomach pain, constipation, nausea and vomiting. He reported a recent alcohol detox treatment. His diagnoses on discharge included chronic PTSD, biliary calculus and anxiety. A psychiatric note from the same date diagnosed anxiety disorder, agoraphobia, depression, single episode, alcohol abuse, PTSD and OCD. The provider determined that Plaintiff's "symptoms are considered mild to moderate acuity and do not warrant inpatient services at this time."[1] Plaintiff was then scheduled for psychotherapy via video conferencing, counseled to taper off of Lorazepam and prescribed Trazodone for depression and sleeplessness and Buspar for anxiety and agoraphobia. Dr. Perry Lewis performed a colonoscopy and an EGD on October 29, 2019 due to Plaintiff's reports of abdominal pain and changes in bowel habits. A single polyp was discovered and removed. The EGD showed normal mucosa of the esophagus and stomach and the duodenal mucosa showed no abnormalities.

Plaintiff was seen in primary care on December 6, 2019 complaining of nerve pain in his feet. Plaintiff reported that he "[w]as home bound, now that he is up and more active the pain is

---

[1] Administrative Record, ECF 8-8, at *14 (Bates stamp p. 484).

worse and goes down both legs."[2] A cane was provided to assist with ambulation and he was prescribed gabapentin for nerve pain. At a follow up with Dr. Ing on December 20, 2019, Plaintiff was cooperative, appeared older than his age, and exhibited calm behavior, normal speech, anxious mood and bland affect. He had fair fund of knowledge, insight and judgment. Dr. Ing noted that Plaintiff's anxiety with severe agoraphobia was "improving some."[3] Plaintiff complained of abdominal pain with diarrhea and constipation at a clinic visit on January 20, 2020. Plaintiff's gabapentin and calcium polycarbophil were increased and he was prescribed dicyclomine.

Plaintiff saw his counselor, Ms. Fisher, on January 30, 2020. He reported taking new medications and being able to participate in life outside of his room, shower, cut his hair and cut his nails. Plaintiff stated he was doing better with alcohol and not drinking to excess. On February 11, March 6 and April 7, 2020, Ms. Fisher described Plaintiff's mood as anxious and his functional status as impaired. On April 23, 2020, Plaintiff's functional status was noted as intact and Plaintiff reported that his anxiety was relatively stable over the past month. Plaintiff's functional status was again impaired on May 7 and June 4, 2020, and variably impaired on July 10, 2020. Plaintiff continued regular sessions with Ms. Fisher. At a visit on February 25, 2021, Plaintiff reported being more anxious and having moments of panic.

Plaintiff went to the emergency room on July 31, 2020 for a headache. He was referred to the VA for inpatient alcohol detox. Plaintiff was admitted at the VA for new onset diabetes mellitus with hyperglycemia and inpatient alcohol detox. On examination, he did not have any focal neuro deficits. A liver ultrasound on August 3, 2020 showed mild hepatomegaly and hepatic steatosis. A head CT on August 4, 2020 was unremarkable. Plaintiff's hyperglycemia was treated

---

[2] Administrative Record, ECF 9-2, at *63 (Bates Stamp p. 772).
[3] *Id*. at *61 (Bates stamp p. 770).

with insulin. Plaintiff was discharged on August 5, 2020 with medications for depression and diabetes, a diabetic diet and physical activity as tolerated.

Dr. Ing saw Plaintiff on August 25, 2020 and noted anxious mood, bland affect, normal speech, calm behavior, good fund of knowledge and insight, fair judgment, and organized thought process. At a primary care follow up on August 31, 2020, Plaintiff complained of bilateral knee pain. On November 15, 2020, he was treated for headache with history of sinus congestion and infections.

Plaintiff went to the emergency room on January 29, 2021 for a distal radial fracture and ulnar styloid fracture. His arm was placed in a splint. An orthopedic surgeon, Dr. Turgeon, treated Plaintiff's fracture at the VA clinic on February 4, 2021 and placed a cast on the arm. Plaintiff had a telephone visit with Dr. Ing on March 12, 2021. He reported still having some rough days with OCD and anxiety, but the OCD was a little better. Dr. Ing noted good insight, organized thought process, and good judgment.

A State agency medical consultant, Dr. Patty Rowley, reviewed the medical records for the relevant time period and completed an assessment on March 31, 2021, finding insufficient evidence in the record to establish the asserted physical impairments prior to the date last insured. Similarly, on April 2, 2021, Sergiy Barsukov, Psy.D., concluded that there is insufficient medical evidence to make a medical decision prior to the date last insured.

Plaintiff's counselor, Pamela Fisher, LCSW, completed a mental medical source statement on May 19, 2021. Ms. Fisher stated that she has treated Plaintiff on and off since 2015, seeing him twice per month since January 2020. Plaintiff's diagnoses include PTSD, agoraphobia, OCD, GAD, dysthymia, and alcohol use, early remission. Despite improvement with medications and cognitive behavioral treatment, Ms. Fisher submitted that Plaintiff continues to struggle with

triggers, fears, and compulsive thoughts and behaviors that impair his ability to leave the house at times. She opined that Plaintiff's chronic conditions are not conducive to employment or any social situation requiring attendance and the ability to focus. In her opinion, Plaintiff is unable to meet competitive standards for unskilled work in remembering work-like procedures, understanding and remembering very short and simple instructions, maintaining attention for two-hour segments, maintaining regular attendance and being punctual within customary, usually strict tolerances, sustaining an ordinary routine without special supervision, working in coordination with or proximity to others without being unduly distracted, making simple work-related decisions, completing a normal workday and workweek, performing at a consistent pace without an unreasonable number and length of rest periods, asking simple questions or requesting assistance, accepting instructions and responding appropriately to criticism from supervisors, getting along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes, responding appropriately to changes in a routine work setting or dealing with normal work stress. She also concluded that Plaintiff is seriously limited in his ability to carry out very short and simple instructions and his ability to be aware of normal hazards and taking appropriate precautions.

According to Ms. Fisher, Plaintiff is unable to understand and remember detailed instructions, carry out detailed instructions, deal with the stress of semiskilled or skilled work, interact appropriately with the general public, maintain socially appropriate behavior or use public transportation. She stated that he is seriously limited in his ability to set realistic goals or make plans independently of others, adhere to basic standards of neatness and cleanliness, or travel in unfamiliar places. Ms. Fisher explained that Plaintiff's panic, obsessive, and anxious thoughts impact his ability to focus and concentrate, he tends to hyper focus on criticism triggering OCD tendencies, and his PTSD significantly impacts his ability to have social interactions. Ms. Fisher

determined that Plaintiff is extremely limited in maintaining social functioning and his limitations in attention and concentration would cause him to be off task 25% or more of the time. She also estimated that Plaintiff would miss work more than four days per month and denied that his impairments include alcohol or substance abuse.

## DISCUSSION AND ANALYSIS

In his brief, Plaintiff asserts three issues for review: (1) whether the ALJ erred as a matter of law by failing to properly evaluate the supportability and consistency of the medical opinion of Pamel Fisher, LCSW, in accordance with 20 C.F.R. § 404.1520c; (2) whether the ALJ's residual functional capacity ("RFC") assessment is not supported by substantial evidence because the ALJ rejected the sole medical opinion and formed an RFC assessment based solely on her own lay opinion; and (3) whether the ALJ erred as a matter of law by failing to include limitations related to the severe impairment of agoraphobia in the RFC assessment. Plaintiff disagrees with the ALJ's assessment that mental status examinations did not support Ms. Fisher's opinion. He argues, for example, that being talkative and cooperative does not negate Ms. Fisher's findings concerning his limitations. Plaintiff submits that the ALJ improperly interpreted medical data and substituted her lay opinion for Ms. Fisher's opinion. Further, he asserts that the ALJ's reliance on a lack of treatment is improper because Ms. Fisher noted that treatment was not continuous due to the severity of Plaintiff's PTSD and agoraphobia. Plaintiff also contends that, contrary to the ALJ's assertion, Ms. Fisher stated that her opinion relates to the time period beginning in 2015. The only opinion evidence in the record is Ms. Fisher's source statement. As a result, Plaintiff argues that the ALJ improperly substituted her lay opinion when she determined that Ms. Fisher's opinion was not persuasive. Finally, Plaintiff complains that the ALJ recognized agoraphobia as a severe impairment but did not include any discussion concerning his inability to leave home in the RFC

analysis. Plaintiff submits that an inability to leave home would cause significant absenteeism, which was not addressed by the ALJ.

In response, the Commissioner asserts that the ALJ's RFC finding is supported by substantial evidence. The Commissioner argues that the ALJ's analysis of Ms. Fisher's opinion properly considers the consistency and supportability of the opinion in compliance with the applicable regulations. The Commissioner submits that the ALJ explained the medical and nonmedical evidence considered, identified specific treatment notes that did not support Ms. Fisher's opinion, considered abnormal examination findings, and addressed the opinion's inconsistency with the objective medical evidence in the record. To the extent Plaintiff contends that periods of time lacking treatment supports his allegation of agoraphobia symptoms, the Commissioner points to evidence showing other reasons Plaintiff identified that also contributed to a lack of treatment of missed appointments, including daily alcohol consumption, lack of transportation, missed appointments and conflicts. The Commissioner submits that it is unclear whether the ALJ's statement concerning the time period for Ms. Fisher's opinion pertains to her source statement or an undated letter included with the source statement. Finally, the Commissioner asserts that the ALJ explained her consideration of agoraphobia in her listed impairment analysis and ultimately determined that Plaintiff retained the residual functional capacity to perform light work with specific mental limitations.

In his reply brief, Plaintiff reasserts that the ALJ erroneously stated that Ms. Fisher's opinion did not state a time frame and arbitrarily assessed that Plaintiff would be off task 5 to 9 percent of the workday without a logical bridge to record evidence. Plaintiff contends that the ALJ rejected the only medical opinion in the record and improperly interpreted the medical evidence to craft a different RFC. Plaintiff submits that the ALJ wholly failed to address absenteeism.

The issues raised by Plaintiff all concern the ALJ's RFC analysis. It is the ALJ's responsibility to determine a claimant's residual functional capacity. *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). That finding, however, must be supported by substantial evidence. *Id*. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Newton v. Apfel*, 209 F.3d at 452. On review, the Court will scrutinize the record to determine whether substantial evidence is present to support the ALJ's finding, but the Court cannot reweigh the evidence or substitute its judgment. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). "If the Commissioner's fact findings are supported by substantial evidence, they are conclusive." *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005) (citing *Richardson v. Perales*, 402 U.S. 389, 390, 91 S.Ct. 1420 (1971)).

The revised rules for the consideration and articulation of medical opinions apply to claims filed after March 27, 2017. 20 C.F.R. § 404.1520c. Plaintiff filed her application on January 21, 2020. Pursuant to 20 C.F.R. § 404.1520c(a), the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." The ALJ evaluates the persuasiveness of the medical opinions and articulates the consideration of medical opinions, but the ALJ is not required to explain the consideration of each factor that is considered. 20 C.F.R. § 404.1520c(b). The "supportability" and "consistency" factors are most important. *Id*. Concerning "supportability," the regulation provides "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion or prior administrative medical finding, the more persuasive the medical opinion or prior administrative medical finding will be." 20 C.F.R. § 404.1520c(c)(1). Similarly, "[t]he more consistent a medical opinion or prior administrative medical finding is with the evidence

16

from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion or prior administrative medical finding will be." 20 C.F.R. § 404.1520c(c)(2).

Here, the ALJ provided a brief explanation of her analysis of Ms. Fisher's opinion. The ALJ stated that, "[t]he opinion is not supported by Ms. Fisher's own treatment notes," "[a]bnormalities on mental status examination included anxious/depressed mood, disheveled, appearance, reduced concentration, and poor judgement," "[h]owever, the claimant maintained good eye contact, cooperative/talkative behavior, goal directed thought content, and appropriate speech," and "the opinion is also not consistent with the claimant's limited treatment prior to the date last insured." Administrative Record, ECF 8-2, at *156 (Bates stamp p. 155). The ALJ then concluded, "while [Ms. Fisher] treated the claimant as early as 2015, she did not render the opinion until 2021 and does not address what time frame the opinion relates to."

Plaintiff correctly states that the ALJ erroneously stated that Ms. Fisher's opinion did not identify the time frame for which the assessed limitations apply. On the Mental Medical Source Statement completed by Ms. Fisher, following the consideration of specific limitations and immediately before Ms. Fisher's signature, the form states, "[w]hat is the earliest date the description of ***symptoms and limitations*** on this questionnaire applies?" Administrative Record, ECF 15-13, at *19 (Bates stamp p. 2799) (emphasis in original). Ms. Fisher responded, "2015." *Id*.

It is unclear from the ALJ's limited discussion of Ms. Fisher's opinion—the only opinion evidence in the record—how much she relied on the erroneous finding that Ms. Fisher's statement did not identify the time frame for the assessed limitations before concluding that the opinion is not persuasive. The ALJ did not provide sufficient information from which to glean the effect, if any, resulting from the error. As a result, the RFC finding is not supported by substantial evidence.

17

For the reasons above, the ALJ's decision is not supported by substantial evidence and the decision of the ALJ denying benefits must be reversed. *See Carey v. Apfel*, 230 F.3d 131, 143 (5th Cir. 2000). The identified errors require a remand.

## RECOMMENDATION

It is hereby **RECOMMENDED** that the Commissioner's final decision be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) with instructions for further consideration consistent with the findings above.

Within fourteen days after receipt of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b). Written objections shall not exceed eight pages. Local Rule CV-72(c).

A party's failure to file written objections to the findings, conclusions and recommendations contained in this Report within fourteen days after service shall bar that party from *de novo* review by the district judge of those findings, conclusions and recommendations and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted and adopted by the district court. *Douglass v. United Servs. Auto. Assn.*, 79 F.3d 1415, 1430 (5th Cir.1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

So ORDERED and SIGNED this 7th day of March, 2024.

_____
K. NICOLE MITCHELL
UNITED STATES MAGISTRATE JUDGE